IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROBERT S. OGANEZOV,

                Plaintiff,

v.

CHRISTOPHER M. CARIOSCIA, OFFICER RYAN
MEYERS, OFFICER NICK WILKE, and MAUSTON
AREA AMBULANCE ASSOCIATION,

                Defendants.

OPINION and ORDER

22-cv-558-jdp

---

    Pro se plaintiff Robert S. Oganezov alleged that defendants conspired with the mother of Oganezov's daughter to falsely accuse him of domestic abuse. Because Oganezov was a party in three state proceedings based on allegations of domestic abuse when he filed the complaint, I stayed the case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). Oganezov moves to lift the stay because those proceedings have ended. Dkt. 5. I will lift the stay, reopen the case, and, because Oganezov proceeds in forma pauperis, screen the complaint under 28 U.S.C. § 1915(e)(2)(B).

    I must dismiss any portion of the complaint that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Oganezov's allegations as true and construe them generously, holding the complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I may also consider matters of public record. *See Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). I will dismiss the complaint for failure to state a claim but I will allow Oganezov to file an amended complaint to fix this problem.

ALLEGATIONS OF FACT

Oganezov's allegations are somewhat hard to follow. Defendant Carioscia works as an EMT and firefighter for the Mauston Area Ambulance Association (MAAA), which is a non-profit entity registered with the state of Wisconsin as a non-stock corporation. Although it isn't spelled out in the complaint, it seems that Carioscia has a relationship with nondefendant Alethea Warriner, with whom Oganezov shares a daughter. Carioscia went to Oganezov's residence and threatened to get a restraining order and put him behind bars. Carioscia tried to stop Oganezov from leaving by grabbing his car as it moved. Oganezov took Warriner to pick up Carioscia's vehicle on MAAA's property. Carioscia and other MAAA employees confronted Oganezov and yelled obscenities at him.

"Police departments" and Carioscia were investigating Oganezov based on suspicion of domestic abuse. "Charges were withheld after an unwritten agreement was made between the defendants to allow for [Warriner] to clear her other court case and cast the worst light on [Oganezov]." Dkt. 1 ¶ 6. "As [Oganezov] became aware of this nefarious plot a retaliatory restraining order was put in place against him." *Id.*

Carioscia told Warriner that he wanted her to put Oganezov in jail. Carioscia conspired to file a false police report against Oganezov. An altercation between Oganezov and Warriner left Warriner with only "bruises." But Warriner stated on a police report and in court that she sustained an "injury" during this altercation. At some point, Warriner obtained a compression wrap from Carioscia and returned to the hospital and stated that Oganezov had broken her ribs. Carioscia reported that Warriner's injuries were due to blunt force trauma. Oganezov was charged even though he had spent the prior two days with Warriner and had not broken her ribs.

2

Oganezov went to Carioscia's house to see Warriner and their daughter. Carioscia confronted him and accused him of beating Warriner, which Oganezov disputed. Carioscia called the police and tried to stop Oganezov from leaving by blocking his vehicle. The police told Carioscia to move his vehicle and let Oganezov leave.

STATE COURT PROCEEDINGS

In Juneau County Case No. 2022CV000043, following an injunction hearing, the circuit court entered a six-month domestic abuse injunction against Oganezov, which it later extended to two years. *See Petitioner v. Oganezov*, No. 2022AP789, 2023 WL 3644650, at *1 (Wis. Ct. App. May 25, 2023). Warriner sought the injunction based on allegations that "Oganezov choked and repeatedly struck her, resulting in [Warriner] suffering multiple broken ribs." *See id.* Warriner supported the petition with a criminal complaint against Oganezov in Juneau County Case No. 2022CF136, which charged him with, among other things, aggravated battery based on allegations that he strangled Warriner. *See id.* The state court of appeals affirmed, rejecting Oganezov's arguments that there were errors in the injunction proceedings and that the evidence was insufficient to support the injunction and extension. *See id.* In 2022CF136, Oganezov ultimately pleaded no contest to disorderly conduct and criminal damage to property. Oganezov faced additional charges in Juneau County Case No. 2022CF135 for knowingly violating a domestic abuse order and bail jumping, which were dismissed pursuant to the no-contest plea.

The state court of appeals' affirmance of the circuit court's domestic abuse injunction may have some preclusive effect on Oganezov's claims in this case. But I will not take up that issue at this time.

ANALYSIS

Oganezov sues Carioscia, two police officers, and MAAA. I understand the complaint to assert claims for false arrest, retaliation, and conspiracy under federal law, and defamation under Wisconsin law. Oganezov seeks "an injunction against further conspiracy between all parties" and damages. I see three problems with Oganezov's allegations.

**A. Defendants may not have acted under color of state law**

42 U.S.C. § 1983 creates a private right of action for the deprivations of constitutional rights. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim under § 1983, plaintiffs must allege that they were deprived of a constitutional right and that the deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) ("Section 1983 grants a private right of action against a 'person' who acts under color of state law to deprive another of rights under federal law, including the Constitution."). "Because § 1983 actions may only be maintained against defendants who act under color of state law, the defendants in § 1983 cases are usually government officials [i.e., state actors]." *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010).

Courts do not deem every action by a state official or employee to occur under color of state law. *See Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Action is taken under color of state law "when it involves a misuse of power . . . made possible only because the wrongdoer is clothed with the authority of state law." *See id.* A state officer does not act under color of state law unless his conduct is "related in some way to the performance of the duties of the state office." *See id.*; *see also DiDonato v. Panatera*, 24 F.4th 1156, 1159–60 (7th Cir. 2022)

("[I]t is firmly established that a § 1983 defendant acts under color of state law when he abuses the position given to him by the State.").

A private citizen may be liable under § 1983 if he conspires with a public employee to deprive the plaintiff of his constitutional rights. *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002). "A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

I will assume for screening purposes that MAAA is a governmental entity and that Carioscia is its employee. But Oganezov does not describe any conduct by them that relates to their governmental functions and duties, much less explain how this conduct violated his civil rights. The allegations that Carioscia gave Warriner compression wrap and reported that she had broken ribs due to blunt force trauma do not, without more, suggest that Carioscia took these actions in his capacity as an EMT. This is especially true because, according to Oganezov, Carioscia and Warriner have a personal relationship. The mere fact that Carioscia is an EMT does not suggest that he abused state power.

Oganezov alleges that the defendants reached an unwritten agreement to defame him, but he does not state when defendants did this or describe how they went about doing it. Oganezov alleges that Carioscia and the police were investigating him for domestic abuse, Carioscia called the police on him, and Carioscia falsely told the police that he broke Warriner's ribs. These bare assertions, on their own, do not suggest that Carioscia reached a "meeting of the minds" with the police to violate Oganezov's federal rights. *See Amundsen v. Chicago Park Dist.*, 218 F.3d 712, 718 (7th Cir. 2000); *see also Rogers v. Relitz*, No. 22-cv-730-wmc,

5

2023 WL 2784878, at *3 (W.D. Wis. Apr. 5, 2023) (plaintiff's allegation that defendants called the police on him two times, which led to the service of a temporary restraining order and the institution of criminal charges, failed to suggest that defendants were state actors).

In sum, Oganezov's allegations do not suggest that MAAA and Carioscia took the challenged actions in a governmental capacity or conspired with the police to violate his federal rights. I will not allow Oganezov to proceed on any federal claim against MAAA or Carioscia.

**B.  Defendants may lack personal involvement in the alleged violations**

"Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (alteration adopted). To allege that an individual is personally involved in the deprivation, the plaintiff must identify the individual in the body of the complaint and explain what the individual did, or failed to do, to violate the plaintiff's federal rights. *See id.*; *Stewart v. Rice*, No. 12-cv-339-bbc, 2012 WL 2328227, at *2 (W.D. Wis. June 19, 2012).

Oganezov names Meyers and Wilke, police officers, as defendants. But he does not mention them in the body of the complaint or explain what, if anything, they did to violate his federal rights. I will not allow Oganezov to proceed against Meyers and Wilke.

**C.  I will dismiss the defamation claim if there is no federal claim in the case**

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because I've dismissed Oganezov's federal claims, I'll dismiss his defamation claim without evaluating whether it might state a claim. Oganezov fails to establish that this court could exercise federal diversity jurisdiction over this claim because he and defendants are all Wisconsin citizens.

CONCLUSION

I will allow Oganezov to file an amended complaint that fixes the above problems. In drafting his amended complaint, Oganezov should remember to do the following:

- Carefully consider whether he is naming proper defendants and omit defendants who did not personally participate in, or otherwise cause, a violation of his constitutional rights. Oganezov must take care to allege what each defendant did, or failed to do, to violate his constitutional rights.

- Oganezov should avoid referring to several defendants together. For instance, if more than one defendant has taken a particular action that Oganezov believes supports a claim, he should identify each defendant who took that action.

- Identify by full name all the individuals he wishes to sue in the amended complaint's caption.

- Omit legal arguments other than explaining what types of claims wishes to assert.

ORDER

IT IS ORDERED that:

1. Plaintiff Robert S. Oganezov's motion to lift stay, Dkt. 5, is GRANTED. The stay is LIFTED and the case is REOPENED.

2. The complaint, Dkt. 1, is DISMISSED for failure to state a claim upon which relief may be granted.

3. Plaintiff may have until October 27, 2023, to submit an amended complaint complying with this order.

4. Plaintiff must file his amended complaint on the court's nonprisoner complaint form, which the court will send him with this order. Plaintiff must fill out the form completely. If plaintiff requires any additional space to allege his claims, he may submit no more than five supplemental pages. Any text on the form or a

supplemental page must be large enough and have enough spacing between lines and in the margins for the court to read it easily.

5. The amended complaint will act as a complete substitute for the complaint. This case will proceed on only the allegations made and claims presented in the amended complaint, and against only the defendants specifically named in the amended complaint's caption.

6. If plaintiff fails to comply with this order, I may dismiss this case.

7. The court expects the parties to treat each other and the court with respect. Any abusive or threatening comments or conduct may result in sanctions, including entry of judgment against the offending party.

8. Plaintiff must inform the court of any new address. If he fails to do this and defendants or the court cannot locate him, this case may be dismissed for failure to prosecute.

9. Plaintiff should keep a copy of all documents for his own files. If he is unable to use a photocopy machine, he may send out identical handwritten or typed copies of his documents.

10. The clerk of court is directed to send plaintiff copies of this order and the court's nonprisoner complaint form.

Entered September 27, 2023.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge