IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROBERT S. OGANEZOV,

Plaintiff,

v.                                                          OPINION and ORDER

CHRISTOPHER M. CARIOSCIA and MAUSTON                        22-cv-558-jdp
AREA AMBULANCE ASSOCIATION,

Defendants.

Pro se plaintiff Robert S. Oganezov alleged that defendants conspired with the mother of Oganezov's daughter to falsely accuse him of domestic abuse. I dismissed Oganezov's complaint for failure to state a claim upon which relief may be granted, but I allowed him to file an amended complaint to fix this problem. Oganezov has filed an amended complaint that is the same in substance as the original complaint.

Because Oganezov proceeds in forma pauperis, I must screen the amended complaint under 28 U.S.C. § 1915(e)(2)(B) and dismiss any part of it that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from an immune defendant. I must accept Oganezov's allegations as true and construe them generously, holding the amended complaint to a less stringent standard than one a lawyer drafts. *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). I will dismiss the amended complaint with prejudice for failure to state a claim.

ALLEGATIONS OF FACT

Defendant Carioscia works as an EMT for defendant Mauston Area Ambulance Association (MAAA), which is a non-profit entity registered with the state of Wisconsin as a

non-stock corporation. Carioscia was formerly married to Alethea Warriner, who is Oganezov's ex-girlfriend and the mother of his daughter.

In July 2021, Oganezov picked up Warriner from Carioscia's residence. As Oganezov backed out of the driveway, Carioscia grabbed the vehicle and threatened to get a restraining order and put Oganezov in jail.

On September 19, 2021, Oganezov dropped Warriner off in MAAA's parking lot. As Warriner kissed Oganezov goodbye, Carioscia yelled at her to come to him. Oganezov told Carioscia that he was being disrespectful. Carioscia yelled at and started toward Oganezov. Two other MAAA employees yelled at and started toward Oganezov as he drove away.

On December 14 or 15, 2021, there was a confrontation between Warriner and Carioscia. On December 15, 2021, Warriner went to the hospital and was released with no issues. That day, Carioscia sent Warriner a text message stating that he wanted to put Oganezov in jail. A few days later, Carioscia and Warriner falsely stated in a police report that Warriner had suffered injuries due to blunt force trauma. The same day, Warriner used a compression wrap that Carioscia gave her to create the appearance of being injured. Warriner returned to the hospital but "was . . . unable to complete the fabricated story." Ultimately, it was shown that Warriner's pain was due to unrelated issues.

A week later, Carioscia and Warriner asked the police to delay questioning Oganezov. Apparently, this was because Warriner was facing misdemeanor charges in an unrelated case and didn't want to run the risk that questioning would reveal information that could result in a bond violation in the unrelated case. The following individuals agreed to withhold charges against Oganezov until mid-February 2022: Carioscia, Warriner, the Juneau County District Attorney, the Mauston Police Department, the Juneau County Sheriff, and the New Lisbon

Police Department. Allowing Warriner to clear her other court case "delayed the process of investigation which would have allowed Oganezov to prove his innocence." Oganezov was charged the day after Warriner's case was closed. Warriner later told Oganezov that she had gotten out of that case with Carioscia's help because he knew the district attorney.

Meanwhile, Warriner took Oganezov out of state. When Oganezov returned, nondefendant Officer Wilke of the New Lisbon Police Department stated that he couldn't reach Oganezov while he was out of town. Warriner used Carioscia's confidential information "to time an out of state trip" when Wilke was going to call Oganezov.

On February 5, 2022, Oganezov went to see Warriner and his son at Carioscia's residence. While on duty, Carioscia returned home and started to yell at Warriner and Oganezov. Carioscia called the police using his work radio, then blocked the driveway with his work SUV so that Oganezov could not drive away. The police came, instructed Carioscia to move his vehicle, and allowed Oganezov to leave.

On March 9, 2022, Oganezov went to see Warriner at the hospital, and Carioscia attacked him in the hallway, which prompted Oganezov to call the police. The next day, with Carioscia's encouragement, Warriner sought a retaliatory and fabricated restraining order against Oganezov. Warriner wanted to stop Oganezov from seeing his daughter and "worsen [his] position in criminal court."

The Juneau County District Attorney's Office, Juneau County Sheriff's Office, Mauston Police Department, New Lisbon Police Department, and state judges generally ignored Oganezov's complaints about some of the events underlying his amended complaint. The Juneau County District Attorney's Office and Mauston Police Department failed to provide Oganezov evidence that he needed to clear his name and prosecute this case. Oganezov was

coerced into pleading guilty to some of the charges stemming from his alleged assault of Warriner.

## STATE COURT PROCEEDINGS

In Juneau County Case No. 2022CV43, following an injunction hearing, the circuit court entered a six-month domestic abuse injunction against Oganezov, which it later extended to two years. *See Petitioner v. Oganezov*, No. 2022AP789, 2023 WL 3644650, at *1 (Wis. Ct. App. May 25, 2023). Warriner sought the injunction based on allegations that "Oganezov choked and repeatedly struck her, resulting in [Warriner] suffering multiple broken ribs." *Id.* Warriner supported the petition with a criminal complaint against Oganezov in Juneau County Case No. 2022CF136, which charged him with, among other things, aggravated battery based on allegations that he strangled Warriner. *Id.* The state court of appeals affirmed the injunction order, rejecting Oganezov's arguments that there were errors in the injunction proceedings and that the evidence was insufficient to support the injunction and extension. *Id.* In 2022CF136, Oganezov ultimately pleaded no contest to disorderly conduct and criminal damage to property. Oganezov faced additional charges in Juneau County Case No. 2022CF135 for knowingly violating a domestic abuse order and bail jumping; those charges were dismissed as part of the no-contest plea.

## ANALYSIS

Oganezov names Carioscia and MAAA as defendants in the amended complaint's caption. Dkt. 8 at 1, 5. The caption also refers to "et al." In my order to amend, I instructed

Oganezov that the case would proceed against only the defendants specifically named in the amended complaint's caption. Dkt. 6 at 7–8; *see Myles v. United States*, 416 F.3d 551, 551 (7th Cir. 2005). So I will not construe the complaint to allege claims against everyone mentioned in it. Oganezov doesn't clearly allege any federal causes of action, but his allegations suggests claims based on false arrest, retaliation, and conspiracy. Oganezov alleges a defamation claim under Wisconsin law.

## A. Defendants did not act under color of state law

42 U.S.C. § 1983 creates a private right of action for the deprivations of constitutional rights. *See Rehberg v. Paulk*, 566 U.S. 356, 361 (2012). To state a claim under § 1983, plaintiffs must allege that they were deprived of a constitutional right and that the deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *see also Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) ("Section 1983 grants a private right of action against a 'person' who acts under color of state law to deprive another of rights under federal law, including the Constitution."). "Because § 1983 actions may only be maintained against defendants who act under color of state law, the defendants in § 1983 cases are usually government officials [i.e., state actors]." *See London v. RBS Citizens, N.A.*, 600 F.3d 742, 746 (7th Cir. 2010).

Courts do not deem every action by a state official or employee to occur under color of state law. *See Wilson v. Price*, 624 F.3d 389, 392 (7th Cir. 2010). Action is taken under color of state law "when it involves a misuse of power . . . made possible only because the wrongdoer is clothed with the authority of state law." *See id.* A state officer does not act under color of state law unless his conduct is "related in some way to the performance of the duties of the state office." *See id.*; *see also DiDonato v. Panatera*, 24 F.4th 1156, 1159–60 (7th Cir. 2022)

5

("[I]t is firmly established that a § 1983 defendant acts under color of state law when he abuses the position given to him by the State.").

A private citizen may be liable under § 1983 if he conspires with a public employee to deprive the plaintiff of his constitutional rights. *Proffitt v. Ridgway*, 279 F.3d 503, 507 (7th Cir. 2002). "A complaint must contain more than mere conclusory allegations of such a conspiracy; a factual basis for such allegations must be provided." *Bowman v. City of Franklin*, 980 F.2d 1104, 1107 (7th Cir. 1992); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007).

I will assume for screening purposes that MAAA is a governmental entity and Carioscia is one of its employees. But Oganezov does not describe a meaningful relationship between Carioscia's actions and the performance of his official duties. Oganezov alleges that Carioscia took some of the actions when he was on duty, but his allegations don't suggest that these actions "related to the performance of [his EMT] duties." *See Gibson v. City of Chicago*, 910 F.2d 1510, 1516 (7th Cir. 1990). Blocking Oganezov's vehicle with his work SUV doesn't make Carioscia's actions part of his duties. And this action doesn't suggest a deprivation of Oganezov's federal rights. Nor do the allegations that Carioscia gave Warriner a compression wrap and falsely reported that she had broken ribs due to blunt force trauma suggest that he took these actions in his capacity as an EMT. Oganezov hasn't provided any allegations explaining how, in doing these things, Carioscia abused the power he received from the state. Oganezov alleges that Carioscia used his position as an EMT to "gain greater weight" with a police department and district attorney, but what allegations he provides fail to suggest that this was true. The charges against Oganezov were allegedly delayed at the request of Carioscia and Warriner so that she could finish her case, but no allegations suggest that Carioscia abused

6

the authority he had as an EMT to obtain this outcome. In any case, the bare assertion that there was a delay in charging Oganezov doesn't suggest a deprivation of his federal rights. Oganezov contends that the delay stopped him from proving his innocence, but his supporting allegations are sparse and unclear. By themselves, Oganezov's allegations that Carioscia filed a false police report and called the police on him don't suggest that Carioscia was a state actor. *See Rogers v. Relitz*, No. 22-cv-730-wmc, 2023 WL 2784878, at *3 (W.D. Wis. Apr. 5, 2023) (plaintiff's allegation that defendants called the police on him two times, which led to the service of a temporary restraining order and the institution of criminal charges, failed to suggest that defendants were state actors). This is so even though Carioscia once used his work radio to call the police.

The claim that MAAA is a state actor is even weaker because Oganezov doesn't describe any actions taken by MAAA. Moreover, MAAA is not a proper defendant in a § 1983 action. *See Gomez v. City of Chicago*, No. 16 C 7743, 2017 WL 131565, at *3 (N.D. Ill. Jan. 13, 2017) (fire department improper defendant in § 1983 action); *but cf. Bohen v. City of E. Chicago, Ind.*, 799 F.2d 1180, 1189 (7th Cir. 1986) (allowing plaintiff to proceed against fire department when he named the municipality of which it was a part as a defendant). Oganezov could have named the City of Mauston as a defendant, but his allegations don't suggest that it took any of the relevant actions or that it had a policy that caused the alleged constitutional violations.[1]

Because Oganezov's allegations don't suggest that Carioscia or MAAA acted under color of law, I will not allow him to proceed against them on his federal claims.

---

[1] Even had Oganezov named Warriner as a defendant, she isn't a state actor and his allegations are too conclusory to show that she conspired with a state actor to violate his federal rights.

## B.  Nondefendants mentioned in body of amended complaint

As explained, I will not consider every individual and entity named in the complaint to be a defendant. Even if I did, I would not allow Oganezov to proceed against any of them. Any federal claim against the police and sheriff's departments would not be viable because these entities are not subject to suit under § 1983. *See Green v. Chvala*, 567 F. App'x 458, 461 (7th Cir. 2014) (sheriff's department "[could not] be sued under § 1983"); *Williams v. Dane Cty. Narcotics Task*, No. 20-cv-957-wmc, 2022 WL 4079023, at *4 (W.D. Wis. Sept. 6, 2022) (city police department lacks legal capacity to be sued under § 1983). Oganezov mentions a couple of individual police officers, but his allegations against them are sparse and fail to suggest that they deprived Oganezov of a federal right. *See Iqbal*, 556 U.S. at 678. Prosecutorial and judicial immunity would bar any claims for damages against the district attorneys and state judges. *See Imbler v. Pachtman*, 424 U.S. 409, 430–31 (1976); *See Killinger v. Johnson*, 389 F.3d 765, 770 (7th Cir. 2004). Oganezov seeks injunctive relief to stop a conspiracy, but he hasn't alleged any facts that would show that a conspiracy between any of these individuals or entities exists.

## C.  Defamation

When all federal claims have been dismissed, the general practice in federal court is to decline to exercise supplemental jurisdiction over the related state-law claims. *See Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994). Because I've dismissed Oganezov's federal claims, I'll dismiss his defamation claim without evaluating whether it might state a claim. Oganezov fails to establish that this court could exercise federal diversity jurisdiction over this claim because he and defendants are all Wisconsin citizens.

ORDER

IT IS ORDERED that:

1.  Plaintiff Robert S. Oganezov's amended complaint, Dkt. 8, is DISMISSED with prejudice for failure to state a claim upon which relief may be granted.

2.  The clerk of court is directed to enter judgment and send plaintiff copies of this order and the judgment.

Entered November 16, 2023.

BY THE COURT:

/s/

_____

JAMES D. PETERSON
District Judge

9